UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KYAH M., ) | |
| ) | |
|     **Plaintiff** ) | |
| ) | |
| v. ) | No. 2:24-cv-00064-NT |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
|     **Defendant** ) | |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability appeal seeks remand on the basis that the Administrative Law Judge (ALJ) "erroneously evaluated the medical opinion evidence of record in determining her residual functional capacity" (RFC). Plaintiff's Brief (ECF No. 15) at 1. I discern no such error and recommend that the Court affirm the Commissioner's decision.

### I. Background

The Plaintiff applied for benefits in July 2021. *See* Record at 17. After her claims were denied at the initial and reconsideration levels of review, the Plaintiff requested a hearing before an ALJ. *See id.* That hearing took place in April 2023, following which the ALJ issued a written decision finding the Plaintiff not disabled. *See id.* at 17-28, 33-58. In his decision, the ALJ found that the Plaintiff had the severe impairments of bipolar II disorder, major depressive disorder, and allodynia sensory processing disorder. *See id.* at 20. He further found that the Plaintiff had the RFC

1

to perform a full range of work at all exertional levels but that she was limited to simple, routine, and repetitive work; her work had to be low stress, requiring only occasional decision making or changes to the work setting; she could not perform production or pace work; and she could occasionally interact with coworkers but could not interact with the public. *See id.* at 22. Considering this RFC, the ALJ found that the Plaintiff could not perform her past relevant work but that she could perform other work existing in significant numbers in the national economy and was therefore not disabled. *See id.* at 26-27. The Appeals Council denied the Plaintiff's request to review the ALJ's decision, *see id.* at 1-3, making that decision the final determination of the Commissioner, *see* 20 C.F.R. § 404.981.

## II. Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001). Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings. *See Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019). If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result. *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## III. Discussion

The Plaintiff argues that the ALJ erroneously evaluated the opinions of treating providers Suzette Cyr, PMHNP-BC, and Catherine Hynes, LCSW, consultative examiner Donna M. Gates, Ph.D., and agency nonexamining consultants Brian Stahl, Ph.D., and David Houston, Ph.D. *See* Plaintiff's Brief at 9-12.

NP Cyr provided a form medical source statement in which she opined that the Plaintiff's mental health symptoms fluctuated but improved and stabilized with medication. *See* Record at 366. In outlining the Plaintiff's work-related abilities and aptitudes, NP Cyr indicated that she had completed that section of her statement "with the [Plaintiff]" and that the Plaintiff's only serious work limitation related to her ability to "[d]eal with stress of semiskilled and skilled work." *Id.* at 368-69. NP Cyr otherwise rated the Plaintiff's abilities to understand and remember simple instructions, maintain attention for two-hour periods, maintain regular and punctual attendance, work with others, make simple workplace decisions, accept instructions and criticism, respond to changes in routine work setting, and deal with normal work stress as "Unlimited or Very Good" or "Limited but satisfactory." *Id.* at 368. Nevertheless, NP Cyr also checked off a number of work demands that the Plaintiff would find stressful including speed, complexity, deadlines, completing tasks, working with other people, dealing with the public, dealing with supervisors, being criticized by supervisors, simply knowing that work is supervised, remaining at work for a full day, fear of failure, monotony of routine, little latitude for decision making, lack of collaboration on the job, no opportunity for learning new things,

3

underutilization of skills, and lack of meaningfulness at work. *See id.* at 370. NP Cyr further indicated that the Plaintiff would be absent "[a]bout three days per month." *Id.*

The ALJ found NP Cyr's opinion "partially persuasive," noting that most of her opinion was "consistent with the moderate reported symptoms and generally intact mental status findings in her treatment notes." *Id.* at 24. The ALJ went on to explain that although he did not adopt NP Cyr's opinion "verbatim," he found it consistent with limiting the Plaintiff to "simple, low stress, socially limited work supporting a reduced exposure to symptom triggers." *Id.* But the ALJ found NP Cyr's opinion that the Plaintiff would miss three days of work per month "not supported, particularly for simple, low stress, socially limited work." *Id.*

LCSW Hynes also provided a form medical source statement, in which she opined that the Plaintiff, although oriented to person, place, and time and having a normal affect, struggled with "some difficulties," including chronic passive suicidal ideation, decreased short term memory recall, and trouble with mood regulation. *Id.* at 376. In outlining the Plaintiff's workplace abilities and aptitudes, LCSW Hynes rated the Plaintiff's ability to remember work procedures, maintain attention for two-hour periods, maintain regular and punctual attendance, perform at a consistent pace, accept instructions or criticism, deal with normal work stress, understand and carry out detailed instructions, and deal with stress of skilled and semiskilled work as "Seriously limited" or "Unable to meet competitive standards." *Id.* at 378-79. LCSW Hynes also checked off several work demands that the Plaintiff would find

4

stressful, including speed, complexity, deadlines, working within a schedule, making decisions, exercising independent judgment, working with other people, dealing with the public, dealing with supervisors, being criticized by supervisors, simply knowing that work is supervised, getting to work regularly, remaining at work for a full day, fear of failure at work, monotony of routine, no opportunity for learning new things, underutilization of skills, and lack of meaningfulness of work. *See id.* at 380. LCSW Hynes further indicated that the Plaintiff would be absent more than four days per month. *See id.*

The ALJ found LCSW Hynes's opinion "less persuasive" because the level of opined limitations was "not reflected in [her] treatment notes," which showed "largely normal mental status findings in the context of subjective complaints, and the [Plaintiff] reporting substantial functioning such as a positive experience working as an actor part time." *Id.* at 25.

Dr. Gates performed a psychological evaluation of the Plaintiff. *See id.* at 503. In her report following that evaluation, Dr. Gates opined, "[The Plaintiff] is capable of following work rules, relating well to others and using good judgment for jobs within her vocational ability. She can manage a mild level of work-related stress and function independently on simple tasks when she is psychiatrically stable. She can maintain her personal appearance." *Id.* at 506.

The ALJ found Dr. Gates's opinion "mostly persuasive" and noted that although he did not adopt it "verbatim," he incorporated it into his mental RFC assessment, "with additional safeguards to reduce exposure to symptom triggers."

5

*Id.* at 25.

When evaluating the Plaintiff's claim at the initial level, Dr. Stahl opined that she was "able to understand and remember simple instructions and tasks" but could not "handle the stress of complex work." *Id.* at 63. Dr. Stahl further opined that the Plaintiff was "able to work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek," "work with coworkers and supervisors but not with the public," and "adapt to simple changes." *Id.* at 64. He explained, "[The Plaintiff has] a college degree and some history of complex work. Referred by PCP to psych clinic for treatment of depression, anxiety, [and] personality disorder. Specialty clinic indicates primary mood and anxiety symptoms. Some improvement with treatment. Some variability in symptom reports but generally good mental status. . . . Despite conditions and associated limitations, able to do what is outlined in the [mental RFC]." *Id.* at 65. Dr. Houston assessed the same limitations when reviewing the Plaintiff's claim at the reconsideration level. *Id.* at 72-75.

The ALJ found Drs. Stahl's and Houston's opinions "persuasive" because the Plaintiff's "medication management and counseling notes support[ed]" that she had "mental impairments consistent with limiting her to simple work to address her times of reduced focus, and limiting her stress and social interaction to reduce triggering symptoms." *Id.* at 25.

The Plaintiff argues that the ALJ erred by (1) failing to explain his reasons for rejecting some of the stress triggers identified in NP Cyr's opinion, (2) rejecting LCSW Hynes's opinion, and (3) relying on the opinions of Drs. Stahl and Houston

6

even though they did not explicitly acknowledge the Cyr and Hynes opinions. *See* Plaintiff's Brief at 9-10. Because of these purported errors and because the ALJ's RFC does not align with any single expert's opinion, the Plaintiff posits that the ALJ must have inappropriately relied on his own interpretation of the medical evidence. *See id.* at 10. Finally, the Plaintiff faults the ALJ for failing to evaluate fully the reasons why Dr. Gates, NP Cyr, and LCSW Hynes opined that she "would be incapable of sustaining a full-time work schedule." *Id.* at 10-11.

As an initial matter, I find the ALJ's articulation of how he weighed the opinion evidence concise but sufficient to understand his reasoning and satisfy the regulatory requirements. *See Farley v. Astrue*, No. 06-221-P-H, 2007 WL 4608723, at *3 (D. Me. Dec. 28, 2007) (declining to remand where there was "no reason to think that a different outcome would ensue" by sending the case back for the ALJ to provide "a longer written analysis"); 20 C.F.R. § 404.1520c(b)(1)-(2). Although it is true that the ALJ did not always explicitly use the words "supportability" and "consistency," his decision makes clear that he considered both of those factors when evaluating the opinions at issue, and this Court has previously rejected the magic words approach seemingly advocated for by the Plaintiff. *See, e.g.*, *Kyle K. v. O'Malley*, No. 2:23-cv-00044-JAW, 2024 WL 356910, at *3 (D. Me. Jan. 31, 2024) (rec. dec.) (holding that an ALJ's decision was clear enough to satisfy the articulation requirements of 20 C.F.R. § 404.1520c(b)(2) even though the ALJ did not explicitly use the word "consistency"), *aff'd*, 2024 WL 1092998 (D. Me. Mar. 13, 2024). And contrary to the Plaintiff's suggestions, the ALJ was not obligated to explain in detail

7

how he evaluated every aspect of every opinion—that would be infeasible. *See Kaitlynn H. v. O'Malley*, No. 1:23-cv-00429-SDN, 2024 WL 4969980, at *3 (D. Me. Dec. 4, 2024) (rec. dec.) ("[T]he ALJ was not obligated to provide a detailed evaluation of every statement in [the provider's] opinion."), *objection filed*, ECF No. 21 (D. Me. Dec. 18, 2024); 20 C.F.R. § 404.1520c(b)(1) ("[I]t is not administratively feasible . . . to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in [the] case record.").

I am also not persuaded that the ALJ improperly interpreted raw medical evidence because his mental RFC assessment does not line up exactly with any expert opinion. ALJs are free to "pick and choose among different experts' opinions" and "adopt only a portion of an expert's opinion." *Tabetha S. B. v. Saul*, No. 1:18-cv-00445-JHR, 2019 WL 5866068, at *5 (D. Me. Nov. 8, 2019) (cleaned up). The ALJ here accepted the opinions of NP Cyr and Drs. Gates, Stahl, and Houston that the Plaintiff was capable of simple, low stress, and socially limited work and imposed a few additional commonsense safeguards—like limiting the Plaintiff to nonproduction paced work—to avoid the less abstract stress triggers identified by NP Cyr. *Cf. Chantal E. v. Kijakazi*, No. 2:22-cv-00126-NT, 2023 WL 5123730, at *2-3 (D. Me. Aug. 10, 2023) (holding that an ALJ did not exceed the bounds of his competency by limiting the claimant to simple, repetitive, and nonproduction paced work even though no expert had assessed those precise limitations because the ALJ

8

permissibly "applied his common sense to determine the functional implications of the evidence").

The Plaintiff nevertheless argues that the ALJ's RFC assessment is fatally flawed because he did not explain why he rejected some of the "stress triggers identified by [NP] Cyr." Plaintiff's Brief at 9. It is not clear to me, however, that the ALJ rejected any of the stress triggers identified by NP Cyr, particularly where the stress triggers did not speak directly to the Plaintiff's RFC because they did not "describe the most [she could] still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Rather, the ALJ's RFC assessment captures the essence of the categories of stress triggers—speed, complexity, and social interactions—while being consistent with the specific limitations identified in the opinions of NP Cyr and Drs. Gates, Stahl, and Houston. *See Dimambro v. U.S. Soc. Sec. Admin.*, No. 16-cv-486-PB, 2018 WL 301090, at *8-9 (D.N.H. Jan. 5, 2018) (holding that an ALJ is not obligated to adopt expert opinions "verbatim" and may translate expert "findings into a succinct RFC" so long as the RFC findings "capture the essence of, or are consistent with, the limitations identified by the experts" (cleaned up)).

The Plaintiff's remaining arguments fall flat. She takes issue with the ALJ's rejection of NP Cyr's opinion that she would miss several days of work per month and LCSW Hynes's overall more restrictive opinion, *see* Plaintiff's Brief at 9-11, but she fails to engage with the ALJ's decision as whole and is just asking this Court to reweigh the evidence, *see Kyle K.*, 2024 WL 356910, at *3. She argues that Drs. Stahl's and Houston's opinions cannot serve as substantial evidence because

9

they did not specifically address the evidence from NP Cyr and LCSW Hynes, *see* Plaintiff's Brief at 10, but she does not cogently rebut the presumption that Drs. Stahl and Houston "reviewed all the then-available file evidence," *Pierce v. Astrue*, No. 1:10-cv-242-JAW, 2011 WL 2678919, at *4 (D. Me. July 7, 2011) (rec. dec.), *aff'd*, 2011 WL 3270251 (D. Me. July 29, 2011), and she concedes the evidence included NP Cyr's opinion at the time of Dr. Stahl's review and both NP Cyr's and LCSW Hynes's opinions at the time of Dr. Houston's review, *see* Plaintiff's Brief at 10. She also argues that the ALJ failed to grapple with the Dr. Gates's caveat that the Plaintiff was capable of simple low stress work "when psychiatrically stable," *see id.* at 10 (quoting Record at 506), but the ALJ specifically quoted that portion of Dr. Gates's opinion, discussed the Plaintiff's treatment history and largely normal mental status findings in detail, and also relied in part on the expert opinion of Dr. Houston, who (1) reviewed Dr. Gates's opinion, (2) found it consistent with his own, and (3) did not assess any greater limitations than the ALJ, *see* Record at 22-26, 73.[1]

At bottom, I am not persuaded that the ALJ erred in his weighing of the expert opinion evidence and I am satisfied that his RFC assessment is supported by substantial evidence.

---

[1] The Plaintiff also tries to spin a thread with the fact that NP Cyr rated her ability to "[m]aintain attention for two-hour segment[s]" as "[l]imited but satisfactory." *See* Plaintiff's Brief at 5, 11 (citing Record at 368). She points out that the NP Cyr's form opinion defined "[l]imited but satisfactory" as meaning that she would have "noticeable difficulty" maintaining attention for two-hour segments "no more than 10 percent of the workday" and she highlights the vocational expert's testimony that employers would only tolerate an employee being off task 9 percent of the workday. *Id.* at 11 (citing Record at 368, 56). I decline to give credence to this overly strained argument because NP Cyr did not actually indicate what percent of the workday the Plaintiff would be off task and the attorney-created form opinion NP Cyr used seems to have been designed to sow confusion on this point.

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be *AFFIRMED*.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the District Court and to appeal the District Court's order.*

Dated: January 24, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge